**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1192
_____

UNITED STATES OF AMERICA

v.

DANNY CRUZ,
            Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1:20-cr-00161-001)
District Judge: Honorable Christopher C. Conner

_____

Argued: November 6, 2023

Before: RESTREPO, BIBAS, and SCIRICA, *Circuit Judges*

(Filed: March 8, 2024)

Craig E. Kauzlarich            **[ARGUED]**
ABOM & KUTULAKIS
2 West High Street
Carlisle, PA 17013
      *Counsel for Appellant*

Christian T. Haugsby       **[ARGUED]**
U.S. ATTORNEY'S OFFICE
1501 North 6th Street, 2nd Floor
Harrisburg, PA 17102
    *Counsel for Appellee*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

Prosecutors must keep their promises. And if they do not, they must make things right quickly, clearly, and fully. The prosecution here did not do that. Though it promised to support a total offense level of 14 at sentencing, it later endorsed an extra enhancement. After the defendant objected, the prosecution changed course and took no position on the enhancement. But that was not enough. The prosecution neither retracted its erroneous position unequivocally nor fulfilled its promise to the defendant. So we will vacate the sentence and remand to let a different judge consider the right remedy.

## I. CRUZ PLEADED GUILTY TO A CELLPHONE CONSPIRACY

Danny Cruz wanted to make money behind bars. So he hatched a plan to smuggle cell phones into prison and sell them to his fellow inmates. To get the phones in, he bribed a prison guard. Unfortunately for him, the government caught on to his scheme.

Cruz was charged with conspiring to violate the Travel Act (by bribing a prison guard) under 18 U.S.C. §371. Facing up to five more years in prison, he took a plea deal. He pleaded guilty in exchange for the prosecution's "agree[ment] to recommend … that the total offense level is 14, which is based on a [base offense] level 12 per U.S.S.G. §2C1.1(a)(2) (bribery of a public official) and a two-level increase per U.S.S.G. §2C1.1(b)(1) (more than one bribe)." App. 29. Yet "[e]ach party reserve[d] the right to make whatever remaining arguments it deem[ed] appropriate" about how to "appl[y] … the … Sentencing … Guidelines to [Cruz's] conduct." App. 29–30. And if the court asked for briefing, argument, or evidence on how to apply the Guidelines, the prosecution was free to respond.

Though the parties agreed on these calculations, the Probation Office did not. It called for a four-level enhancement because the crime involved "a[] public official in a … sensitive position." U.S.S.G. §2C1.1(b)(3). That enhancement would make the adjusted offense level 18:

- Base offense level for bribery (agreed-upon)          12
- Plus enhancement for multiple bribes
  (agreed-upon)                                          +2
- Plus enhancement for bribing public official
  in sensitive job (disputed)                            +4

               Adjusted offense level    18

- Minus acceptance-of-responsibility discount
  (undisputed)                                           -3

               Final offense level    15

Cruz objected that the sensitive-public-official enhancement did not apply and did not reflect the plea agreement. So, he said, "if the Government endorses the enhancement[,] that … would contravene the Plea Agreement." App. 74. The prosecution then allegedly breached the agreement three times.

*First alleged breach*: To discuss Cruz's objections, the District Court held a presentence conference by phone in July 2022. Though there is no transcript, both parties agree on what happened during that call: the prosecution supported the extra four-level enhancement. Cruz objected that this support breached the plea agreement.

To sort out the confusion, the court asked the parties to brief whether the disputed enhancement applied and whether the prosecution had breached the agreement. In his brief, Cruz sought to withdraw his guilty plea. He argued that the prosecution had breached the deal both by not opposing the four-level enhancement and by supporting a total offense level of 18.

*Second alleged breach*: Responding to Cruz's brief, the prosecution changed course. Its September 2022 brief took no position on whether the four-level enhancement applied. Instead, it summarized the law on the issue neutrally. Thus, the court found no breach and denied Cruz's motion to withdraw his plea. In January 2023, at the start of the sentencing hearing, the prosecution reiterated that it was taking no position on the enhancement.

*Third alleged breach*: At sentencing, the District Court found that the four-level enhancement did apply. So did a three-level reduction for acceptance of responsibility. That made Cruz's final offense level 15 and his final Guidelines

4

range 41 to 51 months. The prosecution then said that range was "fair and appropriate." App. 116, 118. The court sentenced him to 51 months in prison, the top of the range.

On appeal, Cruz alleges all three breaches of the plea agreement. But we need not reach the second and third ones because his first theory correctly identifies an uncured breach. The parties agree on the facts and dispute only whether the prosecution's actions amounted to a breach. That is a pure issue of law, so we review de novo. *United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir. 1989).

## II. THE PROSECUTION BROKE THE PLEA DEAL

### A. The appeal waiver does not bar our review

Plea bargains are contracts between prosecutors and defendants. *Id.* at 1361. Each side agrees to certain charges or sentence calculations and gives up its right to take other positions. Yet these are not ordinary contracts. The stakes are not goods or money, but liberty and justice. So public policy limits what lawyers, as officers of the court, can say and do in court.

Because defendants give up many constitutional rights by entering plea bargains, "courts must carefully scrutinize [them] to insure that the government has fulfilled its promises." *United States v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007). And lawyers do not find the defendant guilty or sentence him; the court does that, after hearing the lawyers out. To do that fairly, judges need to understand the facts and the law. In a plea bargain, lawyers may agree to take certain plausible positions in litigation. But no matter what the plea agreement says, they

5

may not lie to or mislead the court. *See Wharton v. Superintendent, Graterford SCI*, No. 22-2839 (3d Cir. Mar. 8, 2024).

Nor may they breach the agreement. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). If they do, they may not insulate their own breaches from judicial review. True, the parties here waived their right to appeal. Those appeal waivers are generally valid—but not always. *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001). For instance, they do not bar us from reviewing whether Congress authorized a particular sentence. *United States v. Yung*, 37 F.4th 70, 82 (3d Cir. 2022). And they do not stop us from policing the prosecution's breaches of its own obligations under a plea agreement. *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008). Judges must independently verify that the parties have followed the law and their agreements. So we may proceed to consider Cruz's claim.

### B. The prosecution was not free to seek the sensitive-public-official enhancement

The parties dispute what the plea agreement means by "total offense level." App. 29. Cruz reads it "to mean the final, aggregate offense level." Appellant's Br. 14. The government disagrees, saying that it could not be the final calculation because it leaves out the three-level reduction for acceptance of responsibility.

The government is wrong for three reasons. First, the government admits that it drafted the plea agreement and that the phrase "total offense level" was "inartful." Appellee's Br. 20 n.4. So we read the agreement *contra proferentem*: "[T]o the extent there is ambiguity caused by the 'little bit of poor

6

draftsmanship' conceded by the prosecutor, we must construe the agreement against the government as drafter." *United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004), *abrogated on other grounds by Puckett v. United States*, 556 U.S. 129, 134 (2009); *accord United States v. Floyd*, 428 F.3d 513, 516 (3d Cir. 2005). Second, the plain meaning of "total offense level" is that it reflects the "total," which includes all enhancements. Third, we "must read [Cruz's] plea bargain in a manner that gives meaning to each provision." *Floyd*, 428 F.3d at 516. Yet the government's reading would make that term meaningless.

The government also notes that the plea agreement left it free to make "whatever remaining arguments it deems appropriate" about the Guidelines. App. 30. Thus, it argues, the plea deal let it seek the four-level enhancement identified by the Probation Office. But "remaining arguments" are only those left after specific ones run out. The specific stipulation (recommending a total offense level of 14) trumps the general permission. *Rivera*, 357 F.3d at 295. So that provision of the deal does not get the prosecution out of its duty to stick to a total offense level of 14 or less.

In short, the plea agreement barred the prosecution from advocating a total offense level above 14. It remained free to respond to the court's inquiries neutrally and accurately. But it could not support the four-level enhancement for bribing a public official in a sensitive job.

7

## C. By supporting the enhancement, the prosecution broke the plea deal

At the July 2022 presentence conference, the prosecution supported the four-level enhancement for bribing a public official in a sensitive job. The government admits that. It thus supported a total offense level of 18, or 15 with the acceptance-of-responsibility reduction. Either way, it had promised to recommend a total offense level no higher than 14. So it breached the agreement.

The government argues that there was no breach under *United States v. Larkin*, 629 F.3d 177 (3d Cir. 2010). But there, "the government [did] not cross the line between *providing* an analysis, which [was] expressly permitted by [the agreement], and impermissibly *advocating* for application of the enhancement." *Id.* at 191. Here, by contrast, the prosecution crossed that line by endorsing the enhancement. *Larkin* is inapt.

## III. THE PROSECUTION DID NOT CURE ITS BREACH

Shortly after its breach, the prosecution backtracked, taking no position on the four-level enhancement. This attempted cure raises two questions: (1) Can the prosecution cure breaches of plea agreements? (2) If so, did the prosecution cure its breach?

We hold that the prosecution can cure some breaches of plea agreements. And we adopt a two-step framework for evaluating cures. First, we gauge whether cure is needed or even possible. Second, we decide whether the attempted cure sufficed to remedy any harm from the breach. To suffice, at a minimum, the prosecution must promptly and unequivocally retract its erroneous position and give the defendant the benefit of his

8

bargain. But here, at the second step, the prosecution's cure fell short.

### A. Step one: this breach was neither too big nor too small

"*[S]ome* breaches may be curable upon timely objection…." *Puckett*, 556 U.S. at 140; *see also* U.C.C. §2-508 (letting sellers cure improper tenders or deliveries). But not every breach requires cure. Some are extremely minor, causing no meaningful harm. *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005). And a "slip of the tongue or typographical error" may not even be a breach. *See United States v. Alcala-Sanchez*, 666 F.3d 571, 576 (9th Cir. 2012).

Other breaches are too profound to cure. For instance, if a prosecutor agrees to support a lower sentence but then "strong[ly] commit[s] to a sentence at the high end of the guidelines," the cat may be out of the bag. *United States v. Diaz-Jimenez*, 622 F.3d 692, 696 (7th Cir. 2010). At that point, the trial court can avoid a full appeal and reversal only with an immediate remedy, like letting the defendant withdraw the plea or be resentenced before a different judge. *Puckett*, 556 U.S. at 140.

But we suspect that most breaches fall between these two extremes and call for some cure. That includes this breach. Supporting a higher offense level was much more than a technical error. Yet the prosecution did not strongly commit to applying the enhancement. *Diaz-Jimenez*, 622 F.3d at 696. And the prosecution soon changed course, explaining its "confusion surrounding the terms of the plea agreement." App. 92. So it could have cured its breach.

9

### B. Step two: the cure was prompt but not unequivocal or sufficient

If a breach can and must be cured, we ask next if the prosecution did cure it. At a minimum, the prosecution must retract its erroneous position promptly and unequivocally. *See United States v. Ligon*, 937 F.3d 714, 720 (6th Cir. 2019); *Diaz-Jimenez*, 622 F.3d at 696; *United States v. Amico*, 416 F.3d 163, 165 (2d Cir. 2005). And for courts to even consider a cure, a defendant must get the benefit of his bargain. *See Alcala-Sanchez*, 666 F.3d at 576; *see also Vaval*, 404 F.3d at 155. Meeting these requirements is necessary to cure a breach but may not be sufficient.

Though the breach was curable, the prosecution did not cure it. Its September 2022 brief was prompt enough. But the prosecution did not retract its erroneous position unequivocally. Rather than endorsing a total offense level of 14 or retracting its earlier statement, it stayed neutral. And after the court applied the enhancement, the prosecution said the resulting range was "fair and appropriate." App. 116, 118. Thus, far from counterbalancing its breach, the prosecution may have compounded it.

Nor did Cruz get the benefit of his bargain. He bargained for both sides to "present a united front" to the court about the total offense level. *Alcala-Sanchez*, 666 F.3d at 576; *see also United States v. Purser*, 747 F.3d 284, 290 (5th Cir. 2014) (Higginbotham, J.). Yet the prosecution did not back him up.

This analysis may differ from harmless-error review. One court has distinguished the two, explaining that "with a cure of breach, the government abides by the plea agreement, while harmless error excuses a lapse of government performance."

10

*Purser*, 747 F.3d at 294. So, the court reasoned, the question is not whether the breach was "excuse[d]" but whether the legal error was "remov[ed]" or "correct[ed]." *Id.*

Plus, it is an open question whether we may excuse these errors as harmless when, as here, the defendant objected promptly. *See Puckett*, 556 U.S. at 141 n.3. True, we have held that, at least when a habeas petitioner failed to object in the trial court, this type of error is neither structural nor defies harmless-error review. *See Lacombe v. Warden James T. Vaughn Corr. Ctr.*, No. 21-1886 (3d Cir. Mar. 8, 2024). Yet we leave that question open because, under any test, the government has not shown that its breach was harmless. The court applied the disputed enhancement, though it could have chosen not to. And the prosecution did not correct its legal error. So under any standard, the prosecution loses.

Cruz immediately objected to the prosecution's breach. Though the prosecution changed course, it never retracted its erroneous position unequivocally. And Cruz never got the benefit of his bargain. So the prosecution did not cure its July 2022 breach.

## IV. ON REMAND, A NEW JUDGE MUST CHOOSE THE REMEDY

Because the prosecution did not cure its breach, we will "remand the case to the district court for a determination whether to grant specific performance or allow withdrawal of the plea." *United States v. Nolan-Cooper*, 155 F.3d 221, 241 (3d Cir. 1998). We have no reason to question the experienced judge's impartiality. But Cruz might understandably fear that the prosecution's breach will still ring in the judge's ears. So

11

"to avoid even the appearance of such harm, when we do remand for breach of a government obligation [to engage or] not to engage in sentence advocacy, we direct the case to a different judge." *Vaval*, 404 F.3d at 155.

\* \* \* \* \*

If prosecutors break their agreements, they must make amends. Because the prosecution did not do that here, we will vacate Cruz's sentence and remand.